UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GANZA BYIRINGIRO,

Petitioner,

v.

UNKNOWN PARTY,

Respondent.

/

Case No. 1:26-cv-2276

Honorable Jane M. Beckering

**OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will grant the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**Discussion**

**I. Procedural History**

The habeas petition challenges the lawfulness of Petitioner's current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondent to release Petitioner from detention. (Pet., ECF No. 1, PageID.8.) In an Order entered on August 10, 2026, the Court directed Respondent to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 4.) Respondent filed his response on August 13, 2026, (ECF No. 5), and a supplemental response on August 18, 2026, (ECF No. 7).

## II. Factual Background

Petitioner is a native of the Democratic Republic of Congo (DRC) who last entered the United States on or about May 6, 2021, as a refugee. (Abdullah Decl., ¶ 4, ECF No. 5-1, PageID.29.) On May 8, 2024, Petitioner "was convicted in the 17th Judicial Circuit Court of Michigan in Kent County, Michigan of Criminal Sexual Conduct in the Fourth Degree and Assault with Intent to do Great Bodily Harm," and was sentenced to 57 days of incarceration and 36 months' probation. (*Id.* ¶ 7, PageID.30.) On March 9, 2025, Petitioner was arrested and charged with Obstructing Judiciary or Congress or Legislature or Commission, which remains pending. (*Id.* ¶ 8.) On March 13, 2025, ICE agents arrested Petitioner and served him with a Form I-862, Notice to Appear (NTA), charging him as deportable under Section 237(a)(2)(A)(i) of the Immigration and Nationality Act (INA). (*Id.* ¶ 9, PageID.30.)

On July 1, 2025, an Immigration Judge ordered Petitioner removed to Rwanda, and in the alternative, to the DRC. (*Id.* ¶ 12, PageID.31.) Petitioner did not file an appeal. (*Id.*) Thus, Petitioner's order of removal became administratively final on July 31, 2025.[1]

On January 26, 2026, ICE officials submitted a travel document request to the consulate of the DRC on Petitioner's behalf. (*Id.* ¶ 14, PageID.31.) On March 10, 2026, April 29, 2026, and June 24, 2026, ICE officials emailed the ICE Enforcement and Removal Office (ERO) Headquarters Removal and International Operations for an update on the travel documents. (*Id.* ¶ 15.) The request for a travel document issued by the DRC remains pending. (*Id.* ¶ 16, PageID.32.)

---

[1] For the purposes of 8 U.S.C. § 1231(a), a removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals (BIA) affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). Petitioner had 30 days from the date of the decision to appeal to the BIA. 8 CFR § 1003.38, 8 CFR § 1240.15.

On July 28, 2026, ICE ERO decided that an escort is required because of Petitioner's criminal history. (*Id.* ¶ 17.) On July 28, 2026, ICE ERO issued Petitioner a Form I-269, Certificate of Identity for Departure from the United States.[2] (*Id.* ¶ 18.) However, "ERO escorts to Congo have been halted due to an Ebola outbreak." (*Id.* ¶ 19.) Because of the Ebola outbreak, ICE has decided to reschedule Petitioner's travel through Egypt, which would allow an ICE agents to escort Petitioner to Egypt and then allow Petitioner to travel to the DRC unaccompanied. (Abdullah Supp. Decl. ¶ 3, ECF No. 7-1, PageID.39.) However, Petitioner cannot travel through Egypt with a Form I-269, Certificate of Identity for Departure from the United States; Petitioner must first obtain a travel document from the DRC. (*Id.*) ICE ERO has requested that ERO HQ expedite the request for a travel document. (*Id.*)

## III. Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

[2] A Form I-269 is a one-time use travel document used to depart the United States. The Democratic Republic of the Congo and the planned air carrier have accepted a Form I-269 in lieu of a travel document issued by the DRC in similar past cases. (Abdullah Decl., ¶ 18, ECF No. 5-1, PageID.32.)

## IV. Merits Discussion

The parties agree that Petitioner is subject to a final order of removal. As a result, Petitioner's present detention is governed by 8 U.S.C. § 1231. However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. In response, Respondent argues that Petitioner's continued detention for purposes of removal is authorized by *Zadvydas*.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). 8 U.S.C. § 1231(a)(6) further provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, the Supreme Court held that following the removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled a total of six months in detention. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[3] "[O]nce [a

[3] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573,

noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Here, Petitioner has been detained for over 13 months since his July 1, 2025, order of removal became final on July 31, 2025. Petitioner argues that there is a good reason to believe that no significant likelihood of removal exists because, despite his cooperation with removal efforts, including signing all required paperwork and calling the consulate and embassy, ICE has been unable to provide him with a status report concerning his request for travel documents and deportation. (Pet., ECF No. 1, PageID.7.) Indeed, ICE's travel document request to the DRC has been "pending" since January 26, 2026. (Abdullah Decl., ¶¶ 14, 16, ECF No. 5-1, PageID.31, 32.)

Under these circumstances, the Court concludes that the fact that the government has been unable to acquire a travel document to effect Petitioner's removal, provides "good reason" to believe that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Because Petitioner has met his burden, Respondents must respond with evidence sufficient to rebut that showing. *Id.* Respondents have not done so. Under these circumstances, Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The Court, therefore, will grant Petitioner's § 2241 petition.

## V. Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

---

576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

.

## Conclusion

For the reasons discussed above, the Court will enter a Judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject, as applicable, to an order of supervision within five days of the date of this Opinion and corresponding Judgment. The Court will also order Respondents to file a status report within six days of the date of this Court's Opinion and Judgment to certify compliance with this opinion and the corresponding Judgment.

Dated: September 3, 2026

/s/ Jane M. Beckering
Jane M. Beckering
United States District Judge